Thank you, Your Honors. Knute Johnson and Emerson Wheat for Aida Agustí Castro. Your Honor, the Court has given us 20 minutes, which Counsel for Chrysler and us are going to split in half, and of my 10 minutes, I'm going to ask to reserve 4 minutes for rebuttal, and I'll keep my eye on the clock with that. There's two issues in this case that I'd like to discuss, Your Honor, the issue of the confrontation and hearsay, as well as the restitution issues. And if I could simply start with restitution. There are we've supplied the Court with recently with letter of authority on two additional cases out of the Fifth Circuit that discuss restitution for uncharged counts and for counts of acquittal. And we'd ask, of course, that the Court consider those, but in those cases the Fifth Circuit held that you may not get restitution for a count for which a person was acquitted or for uncharged conduct. And that would, of course, be the corollary to that is that if a person reaches a plea agreement and agrees to additional restitution, in those cases they could, but they couldn't in this case. And let me also point out to the Court that the government in this case chose to charge particular fraud counts and not a conspiracy to defraud. If there had been a conspiracy to defraud, then the government could have received restitution for the entire time of the conspiracy for losses. They chose to charge individual fraud counts. And in this case, in your view, in your view, counsel, is the are the Fifth Circuit cases consistent with the Ninth Circuit law on this topic? Yes, Your Honor. I believe they are. How? Well, I believe they're consistent. They're also consistent with the what we have presented as the constitutional dimension to that, the ability of the Court to order restitution beyond a count of conviction. In this case, or in this case with the verdicts as they came out, Ms. Kastner was acquitted of one count, and her son was convicted of that count. And the jurors were not instructed on a conspiracy. They were instructed on aiding and abetting liability. And they were also instructed on the possibility of liability for a co-schemer's acts, vicarious liability, saying if you were a member of a scheme to defraud, the defendant may be responsible for other co-schemer's acts. Well, apparently the jury did not believe that there were co-schemers or that there was, and the Court certainly didn't instruct on a conspiracy. And so when you have just an individual count in this case that shows no evidence whatsoever in the law or in the facts of additional losses, the Court simply shouldn't award restitution. And if you break it down to one count where there was a count of conviction and that was ---- They still have to prove a scheme now, don't they? Well, a scheme or a plan, and there's nothing in the instructions that note there has to be more than one person in that. And they're instructed, they're participated or devised or intended to devise a scheme or a plan to get money from someone else. And there's nowhere in the instruction that says there have to be two people. I can certainly plan. I can certainly scheme. And the fact that ---- Weren't all these properties part of the ultimate scheme that was implied? They were convicted. Ms. Castro was convicted of certain counts of fraud. And the jury verdict form said that. It said that Ms. Castro is guilty of, you know, 1, 2, 3, and 5. And it said wire fraud. The jurors did not say scheme on the verdict form. And in the instruction, it doesn't say that you have to find a wide-ranging scheme involving many other properties. It just says there is a scheme or a plan, statements were made. Let me ask you this. What was the scheme that the government presented to the jury? What they presented to the jury is that these appellants and others made false statements to other people to get property from them. Which property? Well, numerous properties. There was some of the properties at issue in this case and some of the properties that were not at issue in the charge. All right. Did you want to address the other issue? I do. And I'll do that briefly, trying to reserve some time for rebuttal. On the Confrontation Clause issue, Your Honor, the government certainly argued that the these documents that they introduced through declaration were material. They said that when you're talking about the verifications. Right, the verification documents. Right. The government argued there's some suggestion we should have brought each individual person in and every single little thing. But we did something better to meet our burden. We brought the people who would tell you the entire story, and that's Taylor and Ingalls. They're expert witnesses who knew nothing about these individual loan files and knew nothing about the verification. They argued it was important to verify. The banks had to verify. And remember, these weren't banks. These were companies that initially lent money and immediately bundled and sold those loans. And that means that all those notes that they were keeping were not for themselves, but were for someone else down the line. So I would suggest that that is testimonial, what they were doing. They were preparing those notes. And this industry and this business was ripe with fraud. There was indication that these companies were engaged in fraud systematically. And even though that evidence came in through the government's witnesses, and it was in some ways inferential, those are still circumstances that even under a hearsay theory, under the Federal Rules of Evidence, they have to – the government would have to show indicia of trustworthiness, whereas, in fact, what there was is indicia of untrustworthiness. So let me get this. So let me see if I understand this correctly. So they said with respect to these particular documents, these verification documents, they said they qualify for admission under the business exception. Right. Business records exception, the hearsay rule. And they introduced the certificates to meet that, the elements of the business records exception, correct? Right. And your argument is, well, those are nothing more than testimonial. Right. Not only nothing – well, there's two – there's multiple aspects to that. One is that under 803. How could that possibly be testimonial? It's testimonial, I believe, if they're preparing it not for their own business, but there are – there were numerous references in the record to these are documents they were preparing to cover themselves. They prepared those documents knowing and intending them to be used to sell the loans to someone else. Why is – well, why is that not for their own interests? Because it is – I mean, they didn't – they weren't doing them at all in order they'd be testimonial in any shape. They were just determining, number one, whether – that you could say they were said whether to approve them, not to be used in court. You could also say that they testified the reason for their creation, which had nothing to do with whether they would be testimonial to a court or to any particular situation. It was just that they were created for the benefit of the bank in the normal practice. Remember, these weren't banks, and they got – Well, I understand, but in the – I said bank, and I – pardon me – in the normal practice of doing what they had to do. In the normal – You're making an argument – I'm sorry, Judge Smith. I'd finish your answer, Judge Smith. Oh, no. I asked the question. You're making an argument that these weren't really business records. That's one thing. Right. That's a hearsay objection, but you can't argue – I can't see any argument that they were testimonial, that they were prepared for the purposes of litigation. Well, let me first be clear on the hearsay, because I haven't been clear on that. The reason we're saying they're not business records is that what is required is indicia of trustworthiness. And these two companies, WMC and Peoples, there was an FBI investigation. They laid off the workforce. They declared bankruptcy. There was an indication that former employees were told to ignore bad loans. There was employees fired for falsifying information. In addition to that, on the hearsay issue and the testimonial nature, it is – they weren't – this would be a completely different case if WMC and Peoples were taking those mortgages and holding on to them for the life of them. But they weren't, and they never intended to do that. They intended – Yeah, but what you're arguing is that they prepared them for a business purpose other than the one they testified about. That's an evidentiary objection. That's not – that doesn't make them testimonial. I can't find any evidence in this record that these records were prepared for purposes of this lawsuit. Well, Your Honors, I have come to the end of my ten minutes. Is there? Right. No. I think you can make an argument that they were prepared to convince the investors who these loans were bundled up to and sold on months to to buy them, in which case they're not being kept for the purpose of running their own business. They're being kept to – and in that way, I think they're testimonial. Okay. All right. Thank you, Your Honors. You have a very broad definition of testimonial. Yes. Okay. All right. We'll hear from – from the other – behalf of Mr. Kreisler. Yes. Good morning, Your Honor. Janice Deaton on behalf of Mr. Kreisler. Your Honors, Mr. Johnson and I didn't really divide the issues, so if I may pick up with the issue of testimonial, just since we're on that. Sure. Your Honors, in this case, as I cited in my brief, these loans are known as liar loans. We now know what happened, and as Mr. Johnson and Mr. Burns pointed out, the litigation is continuing with regard to this securities fraud. And when – in – pardon me – in Melinda's, what the Supreme Court said is – and this is at 324 – business and public records are generally admissible absent confrontation not because they qualify under an exception to hearsay rules, but because having been created by the administration of an entity's affairs – pardon me – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial, they are not testimonial. So I am not arguing necessarily that if this were a normal mortgage lender, that they would not create these verifications so that they would know that this is a sound business decision. But what we know, and what Mr. Johnson just explained, is that WMC was under investigation. The other – Peoples was going bankrupt or had filed for bankruptcy. There was rampant fraud. They were selling these loans immediately. They weren't holding on to the loans. So these were really CYA, as trial counsel said, documents for the purchasers of the loans. There's nothing in the record to indicate reliability. On the contrary, there's everything in the record to indicate lack of reliability. And so – Okay. Let's assume that – let's assume that you're correct. Why does that make them test – I understand your evidentiary objection. Is there any – and let me ask you the same question I asked your co-counsel at the very end. Is there anything in this record at all that suggests that these documents were prepared for the purposes of this lawsuit? That these documents were prepared for the purposes of this lawsuit? No, the certificate. Yes. That's a yes or no question. Yes. I would say no, Your Honor. I would concede that they weren't –  I must tell you, for me, that answers the testimonial question. I understand your argument to the contrary, but I just want to make sure that we both understand the record the same way. I believe that the certifications, however, were created for the purposes of this lawsuit. Of course. Yeah, they were. Yes. Right. But the actual – The government had to get these business records admitted into evidence. Correct. And they did it through the certifications under 902 – what is it, 902? 90211. Right. Even if, however, the verifications were not created for this particular prosecution against Mrs. Castro and Mr. Chrysler, they still were not reliable because of all of the reasons that we've stated. Yeah. And so they still do not fall under the business – Let me – did you subpoena? Was there any request to have the authors of the certifications brought to testify at trial? Your Honor, I believe – no, and I believe that that shifts the burden to it's the government's burden to prove their case. We weren't going to subpoena the witnesses to assist the government. It's our – As long as they presented certifications that met the statutory requirements or the rule requirements, it seems to me if you wanted to cross-examine, somebody has to haul them in, subpoena them, somebody. I guess I'm having the same trouble my colleague is. If they've done all that they need to do by presenting the certificates under 90211 or 112 with the statute permitting certification, why is it they have to bring the people? If you want to cross-examine people about this, isn't that your job? Where is the law that suggests it's their duty now to bring the people? They presented what they need to in order to get in under 8036. Well, returning to 8036, the question is still whether these documents were actually reliable. And a DEFI – I'm sorry. I pronounced this correctly last night. A DEFI-INTI, which is relied on heavily by the government, was decided pre-Melinda's-Diaz, post-Crawford. But these two cases – I'm still having the same problem. Forget the confrontation clause for a second. Yes. You have a good confrontation clause argument in this case, at least in my view. You may have a good evidentiary argument, which is the issue of reliability. Correct. So my question is on the issue of reliability. So it doesn't matter when those cases were decided, because the rules of evidence remain the same. My question is, how do we review the district court's determination that these were sufficiently reliable? Is that a de novo review, or is it an abuse of discretion review? Well, that would be an abuse of discretion, I believe, review. Yes. He stole my question, so you've answered it. I mean, it seems to me if all we're coming down to is trustworthiness, then we have to go to the district court's determination, which is an abuse of discretion. And what says that it was an abuse of discretion? Well, back to – I guess the – I mean, there's no law – you don't – you can't cite any case that says it's an abuse of discretion. Well, the bottom line, Your Honor, Judge Smith, is that, look, in our system, we have an oral trial system. We just wanted to be able to confront Sherry Sheld, confront the people that said, yes, I verified this. We would like to have been able to ask her, you know, why did you verify it, who told you to verify it. Why didn't she ask for her to come? I don't know that she – I don't know that there was any way – I don't know that she even – that we even thought about asking her. Is that what you're saying? I don't know that we had any way of finding her, but I apologize. I just don't know the answer to that. With regard to the restitution, I would just like to point out, to answer Judge Hurwitz's question regarding Fifth – Ninth Circuit law, Young concerned a conspiracy. And there's nothing in the case that I could read that the issue of whether the restitution order applied fell outside of the overt acts or timing of the conspiracy. That issue simply wasn't raised. However – I thought we had a series of cases under the Victims' Rights Act that said that because the standard of proof was different, because you had to prove criminal charges by a – beyond a reasonable doubt, that that restitution could be proved by a lesser standard and causation of loss by a lesser standard, that a district judge could impose restitution on counsel for which there was an acquittal. I could give you the sites, but I'm not – do you think that's wrong? Well, I do think that's wrong now, Your Honor, based on co-counsel's argument in his restitution brief in Ms. Castro's – Based on the Fifth Circuit. Based on the Fifth Circuit cases. Based on Booker. Pardon me, not Booker. Based on Alin. Based on the mandatory Victims Restitution Act refers specifically to a scheme, a conspiracy, a pattern of criminal activity of conviction. If the government had chosen to list the different aspects of scheme as counts and proven them up beyond a reasonable doubt, we would be in a very different position here. I guess before you sit down, I would really like to have you respond to why these – your restitution appeals shouldn't be dismissed as untimely in any event. Thank you, Your Honor. First of all – Because that seems to me to be the toughest one for you. I mean, I can get to his and I can work through it as we've tried to question him, but for you, they're untimely. Well, Your Honor, at the time of sentencing, judge – there was a great deal of confusion in this case. Judge Miller gave Mr. Kreisler, who was a practicing attorney, his appellate rights, and he said, I'm going to give you your appellate rights now so that you can get things started. Mr. Kreisler filed a notice of appeal of conviction and sentence at that time. Then the Court also said that there would be a restitution hearing on December 10th. Mr. Kreisler being in custody at that point and filed a second notice of appeal naming the restitution. I'm well aware of the facts. I guess the worry is that there was never an appeal filed after the district court made its order. And, Your Honor, what I would say is that, as I indicated in my papers, I was actually called by the Court and asked if I would – if they could just appoint me to the restitution appeal, consolidate the two appeals, and then stayed that. And the Court did stay that appeal. If the Court finds that it's – I mean, that's the argument. The rules don't – are not mandatory. They are to be liberally constituted. Well, it seems in the United States v. Sadler, if the government properly objects to the untimeliness, the panel must dismiss the appeal. That's what Sadler says on 940 note 10. And, Your Honor, what I would respond to that is that the government should have been subjected earlier before the briefing was done. And, of course, Mr. Chrysler might have a habeas corpus if that's the case. But I would contend that it was cured by this Court's granting of the stay, consolidating the appeals, and in its order that I did discuss in my reply brief. Okay. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the Court. My name is Rebecca Kantor. I'm here on behalf of the United States, along with my colleague, Valerie Chiu. I will be arguing the restitution portion of the briefing, and my colleague will be discussing the trial portions and any sentencing issues the Court might have. To that end, I'm going to try to take 10 minutes and even lose backwards so I can start by addressing these points. I'll start by addressing the question of the untimeliness of Mr. Chrysler's appeal. And I concur with the Court's indication that Sadler is very clear on a couple of points that are important. One, it is a mandatory rule. It's not jurisdictional, but it is mandatory, contrary to what counsel indicated. And so in this case, the Court must dismiss it if there's a properly raised objection. And as to the argument that the government failed to raise it in a motion to dismiss, Sadler directly addresses that question, because that was an issue in that case as well. And in this case, it was not necessary for us to do so. We timely raised it in our answering brief, and it should be dismissed. I'd also like to now address, Judge Hurwitz, your question about the Ninth Circuit line of cases that are in our we would contend inconsistent with the Fifth Circuit cases that were brought up in the 28J letter. Some of these cases are in the briefing. Most of them are not, and the reason for that is this was not raised in the briefs. But because the Court asked the question, I would like to point to the cases that do support our argument that, in fact, all of the loans, all of the activities that are part of the scheme to defraud, and there's really no dispute that scheme to defraud is an element of the wire fraud statute. And in this circuit, the best case, the most recent case, is actually unpublished, but it's the Lievanos case, L-I-E-V-A-N-O-S, from 2011. And it dead-on is a loan fraud case. It says that in a – there was an acquittal on some of the substantive wire fraud counts, the same as in this case. And nonetheless, restitution was affirmed as to the entire restitution, which included loans that were not only outside what was charged, but on which there was an acquittal. In terms of published cases, I would point the Court to the Brock-Davis case. That's 504F3rd at page 999. This is cited in the briefs. And in the Brock-Davis case, it's not a loan fraud case. It's a drug case. But it is an example of a case where the Court explicitly relied on its precedent here in the Ninth Circuit to say that the restitution order can include acts that were outside of what was charged. And the – I understand the outside of charge, but I'm interested now in the acquitted. Because outside of charge strikes me as different than acquitted. I can see why it strikes you as different, but from a legal perspective, it is functionally the equivalent. And the reason is the logic is exactly the same. It comes down to a burden of proof. In the trial court, of course, we had to prove beyond a reasonable doubt. We evidently failed to satisfy the jury beyond a reasonable doubt as to one count of one defendant, and we know why. It was clear to us from the trial record why that was. But the district court judge has the benefit of looking at all of the trial testimony, all of the evidence presented at the restitution hearing, all of the information in the PSR. And this judge was clearly satisfied that all of these properties for which there was restitution were part of the scheme. And it really – it comes down to the abuse of discretion standard, and it was not an abuse of discretion for him to make that determination. And he did find the government met its burden by a preponderance, even though the jury found otherwise on one count. And by the way, I think you accurately described our case law. I don't like it. But I did acquit it. Right. Which is an entirely different matter. It is in accord with the Second Circuit, for what that's worth. The Ninth Circuit is aligned with the Second Circuit, and I would point the Court to the Boyd case. But you'd really agree, I guess, that as to that which is the underlying acquitted offenses, we don't have a case dead on. There's no published case dead on. That's correct. I think it's worth noting, though. I don't have too much concern with what the unpublished says. That's fair. I want to make an important factual point, though, on this point, in case that's an issue that the Court is concerned about. In this matter, the acquittal was as to renumber count 4. You may recall we had to renumber them for the purposes. The specific low that that related to was the first loan on the Camino or Secula Sequoia property, which was related to borrower Paulino Mentado. Right. There was no restitution ordered for that particular loan. So even if the Court was troubled by the fact that there was an acquittal on that, there was no restitution. And I'll tell you why. This goes to the Court being very diligent in following the principles of Young and the other cases and how to calculate it. In that case, the defendants were very lucky that after the foreclosure, that property was fairly valuable and it resold it enough exactly that it covered not only the unpaid principal balance, but actually all the fees and interest. So there simply is no restitution order with respect to the acquitted wire. With that, I see that I have a few minutes left, but if the Court has no questions, I'm going to leave the time to my colleague to address the remaining issues concerning the trial and sentencing. Okay. Thank you, Your Honor. May it please the Court, Valerie Chiu for the United States. Your Honors, the district court did not abuse his discretion when he determined that these so-called verification documents were sufficiently trustworthy to admit under 803-6 and 902-11. This Court has determined that the district court is entitled to wide discretion in specifically determining whether documents meet the trustworthiness standard, and the Court in its comments on the record at SER 153 to 155 and supplemented later on after the introduction of additional documents and additional testimony further concluded at SER 375 that these documents were sufficiently reliable and trustworthy under the 803-6 and 902-11. Any concerns raised as far as the corrupt mortgage industry and concerns about that, the Court found were sufficiently – were appropriate to raise as far as the weight of these documents and not their admissibility, which the Court found the government had made – met its prima facie burden of showing those qualifying foundational elements. The indicia of reliability and trustworthiness that the Court relied on were internal to the documents themselves. The Court looked at those and compared those with other documents that were admitted under those same certifications without objection by appellants, as well as bolstered by the actual testimony of borrowers, of the CPAs who testified, Roberto and Benjamin Aguilera, by Cindy Moroney, who wrote one of those client reference letters, as well as by the industry individuals who testified from WMC Mortgage and from People's Choice. So the Court determined that, in its own words, the government had proved these sort of three ways to Sunday at S.E.R. 375 as far as at least the admissibility of these documents. But it certainly said and advised the appellants, you can argue till the cows come home that the government has failed to put on the case or put on half a case because the government failed to call the witnesses who actually prepared those documents. And to be clear, the record indicates that the appellants did exactly that. Right out of the box, even at opening statement, the comments were made, you will not hear, we believe, from anyone that actually took these applications at the time. Mr. Kreisler was not involved in granting or denying loans. He was basically a middleman. At the end of the case, we would hope that you would not find Mr. Kreisler to be the fall guy for the banks and would acquit him. That's at S.E.R. 46. So even as of opening statement, and this continued throughout trial, the cross-examination of the industry witnesses through closing arguments as well, this notion that these were unreliable, these banks were the real culprit in this, these individuals who are being tried are really the fall guys for these other entities. Your Honor, and because these fit squarely within the exception for business records, they're not testimonial. They don't violate the Confrontation Clause. Even if there's some suggestion, some concern that this is close to the line, I would point to this Court's post-Melendez-Diaz opinion in United States v. Rojas-Pedroza that the government cited that testimonial means prepared in anticipation of litigation, that its primary purpose was to be prepared in anticipation of litigation, not the mere possibility that it might later be used for the purpose of litigation. That was a warrant of deport type of case where perhaps in a later immigration case that could come up, but at that time it was prepared for that purpose, that regular business purpose or purpose of the agency that was conducting that warrant of deportation. And this Court has any further questions? I would ask you one question to make sure, just to make sure. As to the sufficiency of the evidence to sustain the convictions, as I understand it, to put wire fraud together, one must have a scheme to defraud, one must have the use of the wires and furtherance of the scheme and a specific intent to deceive or defraud. Yes, Your Honor. No material or, excuse me, no reliance is needed, correct? Precisely. Yes, Your Honor. Thank you, Your Honors. Can I ask a brief response? Yes. I'll give you a minute for response. The first is that the Court asked why the defendants didn't subpoena those witnesses in the first instance.   The third is that the Court asked why the defendants didn't subpoena those witnesses. Melendez-Diaz was very, very clear on this. Melendez-Diaz at pages 324 to 325 says the Confrontation Clause does not envision a system whereby the government can proceed by ex parte affidavit and then require the defense to use their rights under the compulsory process clause, pull witnesses to court. Well, if this is testimonial, you might have a really good argument. The other issue is the restitution. And, Judge Hurwitz, your question about Ninth Circuit precedent and the government's argument, the Boyd case, which the government cited and which they just argued, is a conspiracy case, a meth lab that blew up. And at page 998 of the Boyd case, it says, and I'm going to come pretty close to quoting this, even when the conviction involves conspiracy or scheme, restitution is limited to the loss attributable to the specific conduct underlying the conviction. And in this case, the jury was not presented with the entire indictment to decide whether all the acts in it were true. They were asked whether on five different occasions, on discrete dates, and I have the indictment on eight, and it says the specific dates. For instance, count 30 is 825. They all proceed like that. That's what she was convicted of, and that's the only thing she should be required to pay restitution for is, quite frankly, count 48, which is, which translates, I believe, to count 5, which is, I think, $20,000 or $21,000, because they couldn't prove the actual loss, and those were incidental costs. The remaining counts, they either the court made a finding that it would not order restitution or the government withdrew or she was acquitted of. And with that, I'd submit it. Thank you. Thank you. Thank you. Thank you. Thank you. The matter is submitted. We appreciate your arguments and interesting case.
judges: Paez, Smith, Hurwitz